IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09 CV 106-MU

| U.S. COMMODITY FUTURES TRADING COMMISSION | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| BARKI, LLC, a North Carolina limited liability company; BRUCE C, KRAMER, an individual, and FOREST GLEN FARM, LLC, a North Carolina limited liability company, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER FOR CLAIMS DISTRIBUTION METHOD**

THIS MATTER is before the court on the Receiver's Motion for Approval of Proposed Claims Distribution Method. The Receiver's request to distribute funds using the "rising tide" method is not approved. The court instead directs the Receiver to distribute funds via the "net investment method."

**BACKGROUND**

The events giving rise to this suit are not in dispute. Barki, LLC ("Barki") ran a Ponzi scheme that bilked investors out of tens of millions of dollars. Over a span of five years, Barki "fraudulently solicited at least $40 million from at least 79 individuals or entities ("Investors") for the purpose of trading off-exchange foreign currency . . . on their behalf." (Comp. p. 1.) Barki put a fraction of the solicited funds in investment accounts and used the rest to pay the

Defendants, pay illusory profits, or return invested capital. Over the course of the Ponzi scheme, 11 Investors received over 100% "return" on their investment, and the rest received anywhere from 85% to 0%. Nearly all the money Barki invested was lost. The money that is left, plus funds from the sale of the Defendants' properties, must now be distributed to the defrauded Investors.

The court appointed a Receiver in order to process the Investors' claims and distribute the remaining funds. The Receiver argues that the rising tide method for distributing the funds would be most equitable. A number of the Investors have responded to the Receiver's motion: some support the Receiver's position and others oppose it. A hearing was also held in which the Receiver and the Investors were given a further opportunity to advocate for their preferred distribution method.

**DISCUSSION**

When approving a distribution plan, a district court sits in equity and has "the authority to approve any plan provided it is 'fair and reasonable.'" *S.E.C. v. Byers*, 637 F. Supp. 2d 166, 174-75 (S.D.N.Y. 2009) (quoting *SEC v. Wang,* 944 F.2d 80, 88 (2d Cir. 1991)). This Court examined five distribution methods and has decided that the net investment method will provide for the most equitable distribution.

There are at least five distribution methods that a court can use: "(1) the investors could return the [withdrawn] 'profits' to the entire pool prior to the pro rata distribution; (2) the investors could both retain their [withdrawn] 'profits' and demand a full pro rata share of their initial investments; (3) [the rising tide method whereby] the investors could retain their distributed profits but would be forced to subtract that profit after determining the pro rata share

of their investments; (4) [the net investment method whereby] the investors could retain their [withdrawn] 'profits' but would receive a pro rata share based on their initial investments *minus* the profit distribution, i.e., profits would be subtracted before determining the investor's pro rata shares," *CFTC v. Franklin*, 652 F. Supp. 163, 169 (W.D. Va. 1986) *rev'd on other grounds* *Anderson v. Stephens*, 875 F.2d 76 (4th Cir. 1989); or (5) a modified net investment method whereby the investors could retain their withdrawn "profits" but would receive a pro rata share based on the sum of their initial investments and the "illusory profits" that were never withdrawn from the account *minus* the profit distribution, *S.E.C. v. Byers*, 637 F. Supp. 2d at 182.

The first method is "impracticable because it unrealistically would require some investors to return funds that they may no longer have on hand." *CTFC v. Franklin*, 652 F. Supp. at 169. The second method "is inequitable because it rewards some investors for their random good fortune while depleting the share available to investors who were equally situated but merely less lucky." *Id.*

The third, fourth, and fifth methods are all equitable because they "require the fortunate investors to account for payments received before they can obtain the benefit of a pro rata division of the residual receivership assets." *See id.* Although all three methods are equitable, the facts of a given case dictate which method would be most equitable. *See, e.g.*, *S.E.C. v. Byers*, 637 F. Supp. 2d at 182. For example, in *S.E.C. v. Byers*, the court rejected the rising tide method when 45% of the investors would receive no additional compensation. *Id.*

Here, the court is painfully aware that no matter the method employed, the Investors will feel the sting of inequity. That being said, the court finds that the net investment method will be the most equitable mode of distribution.

Using the net investment method, compensation will be given to 100% of the net-loss Investors. Using the rising tide method 55% of the Investors will receive no additional compensation.[1] The court finds that it is more equitable to compensate all the Investors rather than a fraction of them.

The net investment method, however, has some obvious shortcomings, particularly because it fosters a broader range of distribution relative to the rising tide method. Before the scheme came to light, the Investors who suffered a net-loss withdrew anywhere from 85% to 0% of their initial capital contribution. The Investor who already withdrew 85% would receive nothing under the rising tide method; whereas that Investor would receive an additional 2% under the net investment method, for a total effective distribution of 87%. In contrast, the Investors who withdrew nothing would recoup 28% using the rising tide method compared to 15% using the net investment method. The range of effective distribution under the net investment method is therefore 87% to 15%.

In an attempt to narrow the range of effective distribution between the Investors, while still distributing funds to all the Investors, the court examined the modified net investment method used in *S.E.C. v. Byers*. 637 F. Supp. 2d at 171-72. As discussed above, the modified net investment method credits the Investors' accounts with the illusory profits that were rolled over instead of withdrawn. The hope was that the Investors who withdrew nothing might benefit from being credited with the illusory profits that were never withdrawn. Unfortunately, for a variety of reasons, the modified net investment method actually broadened the range of effective

---

[1] To calculate this percentage, the court set the number of investment accounts at 62. This reflects the total investment accounts (78) minus the net profit accounts (11) and the accounts that were transferred into other Barki accounts (5).

compensation, leaving investors who failed to make a withdrawal with as little as 5% of their capital contribution.

For the reasons given above, the court finds that the net investment method is most equitable. The Receiver's request to use the rising tide method is therefore not approved, and the court orders the Receiver to distribute the funds using the net investment method.

Signed: November 12, 2009

Graham C. Mullen
United States District Judge